THOMAS FRAIL

*v.*

MARGARET CARSTAIRS *et al.*

*Opinion filed October 19, 1900.*

1. WILLS—*effect where devisee dies before testator.* Under section 11 of the act on descent, (Rev. Stat. 1874, p. 419,) whenever a devisee, being a child or grandchild of the testator, dies without issue, before the testator, and the will makes no provision for such contingency, the estate so devised is to be treated as intestate property.

2. SAME—*devise construed as creating a determinable fee.* A devise to the testator's children of property to be used for a home for the unmarried ones, conditioned that neither should encumber the property or sell it except to a brother or sister, and with a limitation over, as to the shares of the unmarried children, to the survivor of them in case the others died unmarried, creates a determinable fee, and upon the death of one unmarried child before the death of the testator his interest passes as intestate property, in the absence of a contrary provision of the will.

3. SAME—*word "unmarried," in its usual sense, means never having been married.* The word "unmarried," in its usual sense, means never having been married, although the circumstances may show that said term, as used in a bequest of real estate as a home for the testator's "unmarried children," means not having a husband or wife living at the time of death.

APPEAL from the Circuit Court of Stark county; the Hon. L. D. PUTERBAUGH, Judge, presiding.

M. SHALLENBERGER, and V. G. FULLER, for appellant.

ALLEN P. MILLER, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Barnabas Frail, being the owner of the south-east quarter of section 26, township 13, range 5, in Stark county, died in the year 1893, leaving a last will and testament devising the same. The will, except the formal parts, is as follows:

"*Second*—I give to my sons, James and Thomas Frail, and my daughters, Kate and Margaret Frail, jointly, the south one hundred acres of the south-east quarter of section numbered 26, in township numbered 13, north of the base line, and in range numbered 5, east of the fourth principal meridian, in the county of Stark and State of Illinois, for a home for my unmarried children, and that neither one shall ever give any mortgage or other lien to encumber the same, nor shall either one ever sell the same, or any part thereof, except to a brother or sister or to a child of a brother or sister. And to Susanna Jackson, (wife of John Jackson,) Mary E. Bevier, John Frail and Sarah J. Graves, (wife of John Graves,) the north sixty acres of the quarter section of land above described, to be held by them jointly, never to be encumbered by mortgage or otherwise, and never to be sold by either one, or any part thereof, except to a brother or sister or the child of a brother or sister, each to enjoy one-fourth of the rent thereof.

"*Third*—It is my will that the household and kitchen furniture remain in the home for the use of those who occupy it; that the farming implements that are necessary remain on the place as they may be at my death; the balance of the personal property to be sold in a reasonable time by my executors or the survivors of them, at public sale, giving a credit of twelve months on such terms as they may deem best for the interest of all concerned, the money when collected to be paid to my children equally, and to be all closed up within fifteen months after said sale, if it can be done without loss

"*Fourth*—It is my will that the debts and funeral expenses mentioned herein shall be borne by those to whom I gave the one hundred acres mentioned herein.

"*Fifth*—These bequests to be in full for all labor and money expended, previous to my death, on said premises, or for me or for my care in any manner.

"*Sixth*—It is my will that Thomas Frail pay to his brother and the two sisters owning jointly with him the south one hundred acres mentioned herein, a yearly rent of $200 for the use of said land, and to keep up the fences and pay the taxes thereon, and to allow them pasture and feed for two cows and one horse, and the house, garden, out-houses, yards, barn, stabling, etc., and grounds as at present located or located at my death, except that Thomas shall have the use of such stabling that is not wanted.

"*Seventh*—It is my will that if either James, Kate or Margaret Frail shall die unmarried, their share shall go to the survivor or survivors of them; and it is my further will that at the death of all these parties named in this article dying unmarried, their interests shall all go to my son Thomas Frail, his heirs and assigns forever."

James Frail, one of the sons mentioned in the will, died in 1891, in the lifetime of his father. The daughter Margaret was married in 1894 to David Carstairs, and is one of the appellees. Kate never was married, and died in 1896. Said Margaret Carstairs bought the interests of John Frail and Mary E. Bevier in the north sixty acres, and with her husband, David Carstairs, filed the bill in this case for a partition of said one hundred and sixty acres. The north sixty acres was devised to four of the children, and there is no disagreement concerning that tract. There was a contest between the appellant, Thomas Frail, and the appellee Margaret Carstairs, as to the south one hundred acres. The cause was heard on exceptions to the master's report, and a decree was entered finding that the appellee Margaret Carstairs was the owner in fee simple of one-fourth of said south one hundred acres as directly devised to her, and owner of the shares of James and Kate as survivor of them. The land was partitioned in accordance with the decree, giving three-fourths of the one hundred acres in fee simple to Margaret Carstairs and one-fourth to Thomas Frail.

From the decree confirming said partition Thomas Frail perfected his appeal.

James Frail, one of the devisees, died, leaving no issue, before his father, Barnabas Frail, and the estate devised to him by the will did not vest. Our statute provides for such case, as follows: "Whenever a devisee or legatee in any last will and testament, being a child or grandchild of the testator, shall die before such testator, and no provision shall be made for such contingency, the issue, if any there be, of such devisee or legatee, shall take the estate devised or bequeathed as the devisee or legatee would have done had he survived the testator, and if there be no such issue at the time of the death of such testator, the estate disposed of by such devise or legacy shall be considered and treated in all respects as intestate estate." (Rev. Stat. chap. 39, sec. 11.) Appellees say that the interest devised to James Frail was only a provision to give him a home and support for such time as he continued to live on the estate and remained unmarried, or that the devise was of a life estate to three children with a contingent remainder to the survivor, and that it was not such an estate as would descend as intestate estate. The devise to James was not a mere provision for occupancy and support while unmarried, nor a mere devise of a life estate, since the limitation over was to take effect only upon the event of one of the devisees dying unmarried. By the seventh clause of the will it was only upon the happening of the doubtful and uncertain event of the death of either James, Kate or Margaret unmarried that the share of either should go to the survivor or survivors of them, and upon the death of all said parties unmarried all their shares were to go to Thomas Frail in fee. The estate devised was not reduced to a life estate by that provision, but it remained a fee, for the reason that it might and would continue forever unless the contingency upon which the limitation over was to take effect should occur. While it was a fee,

it was made determinable upon the happening of a certain event. As James left no issue and no provision was made for the contingency of his death before the testator, the statute applies, and the interest devised to him descended as intestate estate. The devise of an undivided one-fourth to James, with all its conditions and limitations, lapsed by his death, and that interest went to the heirs-at-law exactly as if the devise had not been made. All of the heirs were therefore necessary parties and were entitled to their respective interests in said share, but they were not all made parties and were not before the court.

The intention of the testator as declared in his will is to be carried into effect unless prevented by some rule of law, and it is not contended that there is any such rule in this case. The validity of the various provisions of the will is conceded, and the court is merely called upon to ascertain and carry into effect the intention of the testator. So far as the will became effective, it devised one-fourth of the one hundred acres to Thomas Frail without limitation, and one-fourth each to Kate and Margaret with a limitation over to the survivor in the event of the death of either of them unmarried, and in the event of the death of both unmarried, to said Thomas Frail. At the death of Kate her share devised by the will vested in Margaret, as survivor. Kate also inherited an interest in the share devised to James, which passed as intestate estate, and this interest went to her heirs-at-law.

It is argued in behalf of appellant that there could be no partition during the lifetime of the appellee Margaret Carstairs, because if she should not be married at her death, he would take the fee in the one-half now vested in her. Margaret is married and has a child, but it is contended that if her husband should die before her and she should not marry again, she would die unmarried, within the meaning of the will. The original and usual meaning of the word "unmarried" is never having been mar-

ried, but circumstances may show that it is used in the sense of not having a husband or wife living at the time of death. (*Peters* v. *Balke*, 170 Ill. 304.) When the will was made, James, Kate and Margaret were living with the testator. Kate and Margaret had never been married. James was a childless widower and his wife had been dead for twenty-eight years. Undoubtedly, the testator used the word with reference to James in the sense of not then having a wife. The provision of the will for a home for the unmarried children and the use of the premises undoubtedly referred to those who should remain as they were when the will was made and not contract a future marriage, and if one should be married that one would lose the benefit of the home provided for. Taking the provisions of the will and the circumstances together, we think the testator referred to a future marriage. Margaret was married and is no longer within the description of the children for whom the premises were to be maintained as a home. The provision for a home has come to an end, and it would be an unnatural construction of the will to hold that if David Carstairs should die Margaret would again become entitled to the home as unmarried or that her interest should go to Thomas. The contingency of her dying unmarried, as meant by the testator, has become impossible.

We conclude from the will that one-fourth of the fee to the one hundred acres is vested in the appellant, Thomas Frail, one-half in the appellee Margaret Carstairs, and the remaining one-fourth in the heirs-at-law of the testator. The conclusion of the circuit court as to the share devised to James was different, and therefore the decree must be reversed.

The decree is reversed and the cause remanded.

*Reversed and remanded.*