[Civ. No. 968. First Appellate District.—June 13, 1912.]

FRANK K. MOTT et al., Appellants, v. THERESA SCAN-
LAN, Respondent; LOUIS B. EDES, Appellant, and
MARY O'NEILL, Defendant.

POLICE RELIEF AND PENSION FUND—UNMARRIED SISTERS OF DECEASED
POLICE OFFICER ENTITLED TO SHARE—"WIDOWED SISTERS" INCLUDED.
Under section 7 of "An act to create a police relief, health and life
insurance pension fund in the several counties, cities and counties,
cities and towns of the state," approved March 4, 1889 (Stats. 1889,
p. 56), and amended March 31, 1891 (Stats. 1891, p. 287), providing
that in case of the death of a police officer from natural causes, after
ten years of service, "then his widow and children, or if there be no
widow and children, then his mother, or unmarried sisters, shall be
entitled to the sum of $1,000 from such fund," "widowed sisters" of
the deceased must be deemed "unmarried sisters" entitled to
share equally in said fund with a "sister who had never married,"
and it was error to exclude them from such share.

ID.—PURPOSE OF ACT—UNWARRANTED DISTINCTION AS TO "UNMARRIED
SISTERS"—OTHER LEGISLATION—CLASS OF SISTERS NOT PREFERRED.—
The purpose of the act is to make provision for those equally near
and dear to police officers, and to provide a reward for long, cour-
ageous and faithful performance of duty in the event of death. A
widowed sister of a policeman is as close to her brother as one who
has never married, and there being little difference, if any, as to their
necessities and abilities to earn a living, it would seem that the legis-
lature intended no distinction between them, where the other legis-
lation of the state is in harmony with such intent, and no reason
appears why the law-making power should have intended to prefer
one class of sisters to the other.

APPEAL from a judgment of the Superior Court of
Alameda County. William H. Waste, Judge.

The facts are stated in the opinion of the court.

W. S. Angwin, for Appellants.

Fitzgerald & Abbott, for Respondent.

KERRIGAN, J.—This is an appeal from a judgment on the
pleadings entered in favor of Theresa Scanlan, one of the de-
fendants.

The action springs from a statute entitled, "An act to create a police relief, health and life insurance fund in the several counties, cities and counties, cities and towns of the state," approved March 4, 1889, and amended March 31, 1891. (Stats. 1889, p. 56; Stats. 1891, p. 287.)

Section 7 thereof provides: "Whenever any member of the police department of such . . . city . . . shall, after ten years of service, die from natural causes, then his widow or children, or if there be no widow or children, then his mother or unmarried sisters, shall be entitled to the sum of $1,000.00 from said fund."

On September 10, 1910, John P. Scanlan, who had been at that time a member of the police department of the city of Oakland for more than ten years, died from natural causes. At the time of his death he left surviving him no widow, children or mother, but left three sisters, one of whom, Theresa Scanlan, had never been married, and two of whom—Louise B. Edes and Mary O'Neill—were widows.

With more detail these facts were set forth by the plaintiff in a complaint against the defendants, demanding that they interplead, and both sides submitted the case for judgment on that complaint.

The question presented for solution is, Were the widowed sisters of the deceased unmarried sisters?—appellant contending that they were, and respondent taking the view, as did the trial court, that the word "unmarried," as used in the statute, means never having been married.

This act making provision, as it does, for those dependent and near and dear to police officers, is intended to provide a reward for long, courageous and faithful performance of duty. A widowed sister is equally close to a brother as one who has never entered the state of matrimony, and the common experience of mankind teaches us that there is little difference, if any, as to their necessities and ability to earn a living. · Hence it would seem that the legislature intended to make no distinction between them. No such difference as is here contended for by respondent was held tenable in the case of *In re Will of Kaufman,* 131 N. Y. 620, [15 L. R. A. 292, 30 N. E. 242], when the court, passing on a statute providing that "a will executed by an unmarried woman shall be deemed

revoked by her subsequent marriage,'' held that this provision was not restricted in its application to women who have never been married, the court saying, ''The unmarried woman referred to by the statute must be defined according to that rule of statutory construction which requires that the words used in legal enactments shall be understood and taken in their ordinary and familiar significance. So read, the unmarried woman of the statute is the woman who is not in a state of marriage. That the legislature could have had any other idea is both inconceivable and unreasonable.''

In the case of *Estate of Conway*, 181 Pa. 156, [37 Atl. 204], the testator gave his residuary estate to his ''spinster or unmarried nieces.'' Six of his nieces had never been married, and two of them were widows. While the court held that the word ''or'' was used conjunctively, and that therefore both classes of nieces were entitled to share in the residuary estate, in the course of the opinion the court said: ''The spinsters and widows stood in the same relation to the testator; their actual condition was that of single or unmarried women, and no reason for discriminating between them appears in the will or in the circumstances presented by the case. This construction relieves the testator . . . from an arbitrary discrimination between those standing in the same degree of relationship to him, and works equality in the distribution of the estate.''

So a divorced daughter was held to be an ''unmarried daughter,'' and protected in her homestead rights after the death of her parents. (*Anderson* v. *McGee* (Tex. Civ. App.), 130 S. W. 1040, 1043.)

There is a line of cases in conflict with those just adverted to, in which the term is held to mean, as contended by respondent, ''never having been married.'' (39 Cyc. 837.) But it must be conceded that slight circumstances will be sufficient in any case to give the word its other meaning of not having had a husband or wife at the time in question. (*Peters* v. *Balke*, 170 Ill. 304, 312, [48 N. E. 1012]; *Muller* v. *Balke*, 167 Ill. 150, [47 N. E. 355]; *In re Oakley*, 67 App. Div. 493, [74 N. Y. Supp. 206]; *Frail* v. *Carstairs*, 187 Ill. 310, [58 N. E. 401]; 29 Am. & Eng. Ency. of Law, 347.)

Section 56 of the Civil Code provides that ''any unmarried male of the age of eighteen years . . . and any unmarried

female of the age of fifteen years, etc., are capable of consenting to . . . marriage.'' Section 1300 of the same code, prior to the amendment of 1905, provided that ''a will executed by an unmarried woman shall be deemed revoked on her subsequent marriage. . . . '' In neither of these instances did the legislature, by the word ''unmarried'' intend to designate only one who had never entered the state of matrimony; and we are aware of no instance where the legislature in this state has employed the term in its narrow sense.

No reason suggests itself why the law-making power should have intended to prefer one class of sisters to the other; and as the legislature has on other occasions used the word to mean not being married at the particular time, we feel justified in so construing it in this act.

The judgment is reversed.

Lennon, P. J., and Hall, J., concurred.