[Crim. No. 2149.   First Dist., Div. Two.—June 11, 1941.]

THE PEOPLE, Respondent, v. JUANITA McCARTHY, Appellant.

Joseph A. Brown and Alexander Mooslin for Appellant.

Earl Warren, Attorney-General, and Dennis Hession, Deputy Attorney-General, for Respondent.

SPENCE, J.—Defendant Juanita McCarthy, her brother Eddie Pacheco, and her brother-in-law Rexal McGee were charged in one count of the information with the crime of conspiracy to commit burglary and theft and in each of several other counts of the information with the crime of burglary. Defendant Juanita McCarthy was convicted upon a trial by jury of the crime of conspiracy as charged in the first count, of the crime of burglary in the second degree as charged in the second count and of the crime of burglary in the first degree as charged in the third count. Said defendant was acquitted on the remaining counts. Her co-defendants were also convicted but they have not appealed. Said defendant Juanita McCarthy has appealed from the judgment of conviction and from the order denying her motion for a new trial.

The main contention of appellant on this appeal is that the evidence was insufficient to sustain her conviction. We shall therefore briefly summarize the evidence upon which appellant's conviction was based.

Appellant resided in Oakland and her two brothers, Eddie Pacheco and Victor Pacheco, were in Los Angeles. In the early part of May, 1939, said brothers stole some kettle drums and chimes in Los Angeles, which stolen property was brought to the home of appellant on May 19, 1939, by Eddie Pacheco, who then took up his residence with appellant. Thereafter, said Eddie Pacheco and Rexal McGee committed several burglaries, including two separate burglaries committed on the premises of a Mrs. Mullen who was a neighbor of appellant. It was these two last mentioned burglaries which were the subjects of the second and third counts of the information.

On May 22, 1939, being three days after the arrival of Eddie Pacheco at the home of appellant, Mrs. Mullen was present with appellant and Eddie Pacheco in the home of appellant. She heard Eddie Pacheco telephoning to someone regarding drums and after concluding he said to appellant,

"He has already bought some." Shortly thereafter, appellant stated to Mrs. Mullen that it was necessary that she and her brother go to San Francisco that afternoon. On said afternoon, appellant assisted her brother in moving the drums from the back of his car into the back seat of her own car and drove him to San Francisco where he disposed of said drums and chimes at a drum shop. The proprietor gave Eddie Pacheco a check which was made out in the fictitious name of Eddie Francis. Shortly thereafter, appellant and Eddie Pacheco appeared at a tavern in San Francisco, the proprietor of which tavern had known appellant for about twenty years but had never known her brother. Appellant requested said proprietor to cash the check received for the drums and chimes but did not tell him that Eddie Pacheco was her brother or that his name was Pacheco, and not Francis. The proprietor cashed the check which was endorsed by Pacheco using the fictitious name of Eddie Francis which appeared on the check.

On May 25, 1939, the garage on the premises of Mrs. Mullen was burglarized. Said garage had been leased by Mrs. Mullen to a Mr. Coleman who resided with her. Entrance thereto was obtained by opening the padlock on the garage door and several tools, including two crowbars and a screw driver, were taken. Most of these stolen tools were later found on May 30, 1939, in an automobile occupied by defendants Pacheco and McGee. The stolen screw driver was later found on the floor inside Mrs. Mullen's home after her said home had been burglarized on May 26, 1939.

On the night of May 25, 1939, being the night when the garage was burglarized, appellant had called Mrs. Mullen and had asked Mrs. Mullen to "come and sit with her that evening". Mrs. Mullen told appellant that she could not do so; that she was going to lodge; and that there would be no one at her home that evening. There was no one at the Mullen home from 8 p. m. until midnight that evening and it was during that time the burglary was committed. At the time of the arrest of defendant Pacheco he had in his possession a key ring containing a bunch of keys belonging to appellant. Among these keys was a key which opened the padlock on said garage. Shortly after defendant Pacheco's arrest, appellant phoned police headquarters and requested the return of said keys even though she admitted that she had

duplicates of all of said keys other than the key which opened the padlock on said garage.

On May 26, 1939, being the night after the garage was burglarized, Mrs. Mullen's home was burglarized. Entrance thereto was gained by "jimmying" a window and several articles and some money were stolen. The tools used to force the window had left some distinctive marks and some red paint on the window-sill. Expert testimony was introduced to show that the marks left on the window-sill were caused by the use of the screw driver and the crowbars stolen from the garage on the previous night. These tools had all been painted with a red paint by Mr. Coleman and said paint and the flecks on the window-sill were analyzed to show their similarity. As above stated the screw driver was thereafter found on the floor in Mrs. Mullen's home and the crowbars were later found in the possession of the defendants Pacheco and McGee.

On May 26, 1939, and prior to the burglary of Mrs. Mullen's home, Mrs. Mullen had telephoned appellant; told her that all of the occupants of her home except herself would be away that evening; and asked appellant to come to her home and spend the evening with her. Appellant told Mrs. Mullen that she had to prepare dinner and did not know what hour she could leave to visit Mrs. Mullen. Mrs. Mullen then stated that she would go to her daughter's home first and appellant offered to call there for her later. Mrs. Mullen did go to her daughter's home but, finding no one at home, she walked over to appellant's home. Appellant and defendant Pacheco were there at the time and defendant McGee arrived at about 9 o'clock. Mrs. Mullen was then ushered into a sun porch off the kitchen with appellant's daughter and another man, leaving appellant and the other two defendants in the kitchen. Contrary to the custom on former visits of Mrs. Mullen, appellant closed the door between the kitchen and the sun porch and thereafter appellant and the other two defendants were out of Mrs. Mullen's sight and hearing for about one hour. At about 10 o'clock, appellant opened the door and shortly thereafter offered to drive Mrs. Mullen to her home. After arriving there, Mrs. Mullen discovered that the burglary had been committed.

In statements made after appellant's arrest, appellant denied many of the incriminating circumstances. She de-

nied that she had ever seen or heard of the drums; she denied being at the tavern in San Francisco when defendant Pacheco cashed the check; and she denied that she ever asked anyone to cash a check for defendant Pacheco. She further denied owning the key which opened the padlock on the Mullen garage. She further denied that she or either of the other defendants left her house while Mrs. Mullen was there on the night that Mrs. Mullen's house was burglarized. Many of these denials were repeated in her testimony upon the trial but such denials merely created a conflict with the direct testimony of other witnesses and the reasonable inferences to be drawn therefrom.

It appears that the jury believed the direct testimony of the other witnesses and that the several denials by appellant in conflict therewith served to discredit her entire testimony. Our review of the record leads us to the conclusion that there was ample testimony to sustain the conclusion that appellant had conspired with the other defendants to commit the crimes and that she had aided and abetted in their commission. ■■ It was of course not necessary to prove the conspiracy by direct evidence (*People* v. *Little,* 41 Cal. App. (2d) 797 [107 Pac. (2d) 634] ; *People* v. *Fitzgerald,* 14 Cal. App. (2d) 180 [58 Pac. (2d) 718] ), and it was not necessary to prove by evidence, direct or indirect, that appellant had been personally present when the burglaries were committed. (Pen. Code, sec. 971.) ■ On this appeal we must assume in favor of the verdict the existence of every fact which the jury could have reasonably inferred from the evidence and then determine whether such facts were sufficient to sustain the verdict. (*People* v. *Tom Woo,* 181 Cal. 315 [184 Pac. 389] ; *People* v. *Perkins,* 8 Cal. (2d) 502 [66 Pac. (2d) 631] .) In our opinion the facts which the jury impliedly found against appellant were sufficient and could be reasonably inferred from the evidence presented.

There is a further heading in appellant's brief reading ''Errors of the Court and Ruling on Evidence''. Under this heading appellant lists several rulings admitting evidence over appellant's objection. We have examined the various rulings referred to and find no prejudicial error in any of them.

Appellant has also included a heading reading ''Misconduct of District Attorney''. Many of the alleged instances

of misconduct are based upon the claim that the district attorney went outside the record in his argument to the jury. The district attorney did point out to the jury the inferences which he believed the jury should draw from the evidence produced. We believe there was sufficient evidence to support these inferences and that the arguments of the district attorney with respect to said inferences did not constitute misconduct. We have examined the remaining claims of alleged misconduct and they appear to be likewise without merit.

The judgment and order denying the motion for a new trial are affirmed.

Nourse, P. J., and Sturtevant, J., concurred.