Filed 7/21/23  Spaccia v. California Public Employees' Retirement System CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PIER'ANGELA SPACCIA, | B319774 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BS174401 |
| v. | |
| CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed.

Law Office of Robert F. Keehn and Robert F. Keehn for Plaintiff and Appellant.

Mathew G. Jacobs, General Counsel, Elizabeth Yelland Assistant Chief Counsel, and Preet Kaur, Senior Attorney, for Defendant and Respondent.

# INTRODUCTION

Public pension systems exist to induce and reward faithful public service and it is well established that public employee pension rights are protected under the contract clause of the California Constitution. In the wake of several incidents of financial corruption involving public employees, the Legislature adopted the California Public Employees' Pension Reform Act of 2013 (PEPRA), designed to close certain loopholes, curb pension abuse, and discourage corruption. Among other things, the legislation provided that a public employee convicted of a job-related felony forfeits pension benefits earned during the time of the commission of the felony. (Gov. Code, § 7522.72, subds. (b)(1), (c) (forfeiture provision).)[1] Two recent court of appeal decisions[2] have held that the forfeiture provision does not unconstitutionally infringe on a public employee's protected pension rights, nor does it violate the prohibition against ex post facto laws.

Plaintiff and appellant Pier'Angela Spaccia was convicted in 2013 of numerous job-related felonies stemming from her participation in schemes to defraud the citizens and city council of the City of Bell.[3] In this matter, Spaccia challenges the application of the forfeiture provision to her pension benefit by the California Public Employees' Retirement System (CalPERS).

---

[1] All undesignated statutory references are to the Government Code.

[2] *Wilmot v. Contra Costa County Employees' Retirement Assn.* (2021) 60 Cal.App.5th 631 (*Wilmot*) and *Hipsher v. Los Angeles County Employees Retirement Assn.* (2020) 58 Cal.App.5th 671 (*Hipsher*).

[3] We affirmed most of those convictions in *People v. Spaccia* (2017) 12 Cal.App.5th 1278 (*Spaccia*).

The trial court denied her petition for a writ of mandate and a writ of administrative mandamus barring CalPERS from applying the forfeiture provision. She appeals, asserting that the forfeiture provision cannot be applied to her because she started receiving her pension benefits before the forfeiture provision was enacted. We find Spaccia's argument unpersuasive. Instead, we follow *Wilmot* and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1.    Spaccia's Criminal Convictions

Spaccia was employed by the City of Bell from 2003 to 2010, first as the assistant to the city manager and then as the assistant city manager. The city council terminated her employment in July 2010 amidst a highly publicized corruption scandal involving Spaccia and others. Spaccia was arrested in September 2010 and charged with more than 50 counts of job-related criminal conduct.

In *Spaccia, supra,* 12 Cal.App.5th 1278, we summarized in detail the evidence presented at the jury trial. For present purposes, it is sufficient to say that from the outset of her employment through her dismissal by the city council, Spaccia participated in multiple schemes designed to increase beyond all reasonable limits the salaries, fringe benefits, and retirement benefits for herself and others employed by the City of Bell. For example, Spaccia's annual salary rose from approximately $102,000 to more than $340,000 over just seven years with no change in job responsibilities. In addition, the city funded her retirement savings plan in the maximum allowable amount and purchased additional service credit for her, she earned vacation and sick leave accruals at an excessive rate and received monthly

3

checks cashing out the value of those accruals, and she received multiple unauthorized loans from the city in amounts exceeding $100,000 per loan. Spaccia also designed and implemented a supplemental pension plan intended to provide substantial retirement benefits for only herself and the city manager. (See *id.* at pp. 1282–1286.)

In December 2013, after a lengthy trial, a jury convicted Spaccia of multiple felonies relating to the City of Bell scandal including one count of conspiracy to misappropriate public funds in violation of Penal Code section 182, subdivision (a)(1), four counts of conflict of interest in violation of Government Code sections 1090 and 1097, and one count of unlawful secretion of an official record in violation of Government Code section 6200. We affirmed those convictions and they are now final.[4] (*Spaccia, supra,* 12 Cal.App.5th at pp. 1281, 1298.)

## 2.    Spaccia's Retirement Benefits

In October 2010, Spaccia submitted a request for a service retirement to CalPERS.[5] She requested that CalPERS use her final compensation at the City of Bell to calculate her retirement benefit allowance. CalPERS declined and Spaccia requested an administrative hearing. In the interim, Spaccia began receiving retirement benefits in December 2010.

---

[4] The court sentenced Spaccia to an aggregate determinate term of 11 years eight months and imposed a victim restitution order in the amount of $8,254,776.

[5] She also submitted a request for an industrial disability retirement.

In July 2013, the Board of Administration of CalPERS (Board) issued its final decision regarding Spaccia's pension.[6] In sum, and for reasons not pertinent here, the Board determined that Spaccia's retirement allowance should be calculated using her initial salary with the City of Bell and that the five years of service credit purchased for her by the city should be excluded from the benefit calculation.

In late April 2014, CalPERS contacted Spaccia to advise her that it had become aware of her 2013 job-related felony convictions and that a portion of her retirement benefit was subject to forfeiture under section 7522.72.[7] Specifically,

---

[6] Like the trial court, we take judicial notice of the Board's decision. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

[7] Subdivisions (b) and (c) of section 7522.72 provide, as pertinent here: "(b)(1) If a public employee is convicted by a state or federal trial court of any felony under state or federal law for conduct arising out of or in the performance of his or her official duties, in pursuit of the office or appointment, or in connection with obtaining salary, disability retirement, service retirement, or other benefits, he or she shall forfeit all accrued rights and benefits in any public retirement system in which he or she is a member to the extent provided in subdivision (c) and shall not accrue further benefits in that public retirement system, effective on the date of the conviction. [¶] … [¶] (c)(1) A member shall forfeit all the rights and benefits earned or accrued from the earliest date of the commission of any felony described in subdivision (b) to the forfeiture date, inclusive. The rights and benefits shall remain forfeited notwithstanding any reduction in sentence or expungement of the conviction following the date of the member's conviction. Rights and benefits attributable to service performed prior to the date of the first commission of the felony for which the member was convicted shall not be forfeited as a result of this section. [¶] (2) Paragraph (1) shall apply to the extent permissible by law. [¶] (3) For purposes of this subdivision, 'forfeiture date' means the date of the conviction."

5

CalPERS had determined that the seven years of service credit Spaccia accrued between February 1, 2003, the earliest date of the commission of a felony, and September 29, 2010, her last date on payroll, would be forfeited and would result in a reduction in her monthly retirement benefit.

**3.    This Action**

Spaccia initiated the present case in July 2018. The operative verified amended petition asserts six causes of action seeking a traditional writ of mandate (Code Civ. Proc., § 1085), a writ of administrative mandamus (*Id.*, § 1094.5), damages (*Id.*, § 1095), and asserting violations of the contracts clauses, takings clauses, and due process clauses of the United States and California Constitutions. Spaccia asked the court to direct CalPERS to recalculate her retirement benefit by using her highest 12-month salary (i.e., the inflated $340,123 salary she was receiving when the city council terminated her employment) and by including the service credit purchased for Spaccia by the City of Bell. She also asked the court for an injunction barring CalPERS from applying section 7522.72 to cause the forfeiture of service credit earned during her tenure at the City of Bell.

The court stayed the proceedings until the California Supreme Court ruled on the constitutionality of section 7522.72. (See *Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032 (*Alameda*).)

**4.    Motion for Judgment on the Pleadings**

In August 2021, CalPERS moved for judgment on the pleadings. Specifically, CalPERS noted that two recent appellate court opinions applying *Alameda*, *Wilmot* and *Hipsher*, had held that section 7522.72's forfeiture provision could be applied

6

retroactively to retired public employees without running afoul of either the contract clause of the California Constitution or the constitutional prohibition on ex post facto laws. CalPERS argued, therefore, that its retroactive application of section 7522.72 to Spaccia's retirement benefit, which resulted in the forfeiture of approximately seven years of service credit, was permissible and rendered her additional claims moot.

Spaccia opposed the motion, contending that neither *Hipsher* nor *Wilmot* was controlling. Specifically, Spaccia argued that section 7522.72 could not be applied in her situation because, unlike the plaintiffs in *Hipsher* and *Wilmot*, she had been receiving pension benefits for several years before the forfeiture provision was adopted by the Legislature.

### 5.    Order Granting CalPERS's Motion

The court granted CalPERS's motion for judgment on the pleadings. After reciting the factual background, the court summarized the controlling law as set forth in *Alameda*, *Hipsher*, and *Wilmot*. In *Alameda*, the court had articulated a test for analyzing constitutional contract claims in the pension context and applied that test to a different provision of the 2013 legislation. Subsequently, *Hipsher* and *Wilmot* applied that test to the forfeiture provision at issue and both courts concluded that the forfeiture statute did not violate the contract clause of the California Constitution. And in *Wilmot*, the Court of Appeal concluded that the forfeiture law could be applied retroactively to a former public employee who, like Spaccia, had retired before the 2013 legislation's effective date. Accordingly, the court found that CalPERS permissibly applied the forfeiture provision in its determination of Spaccia's retirement benefits, resulting in the

7

forfeiture of all benefits earned during her tenure at the City of Bell.

**6.      Dismissal and Appeal**

By minute order dated December 16, 2021, the court noted that it had granted a motion for judgment on the pleadings "on the bulk of the case" and that Spaccia had agreed to dismiss the remainder of the case without prejudice. The order also stated that, "[p]ursuant to agreement of counsel, the case is ordered dismissed this date." No judgment of dismissal was signed or entered by the court.

Spaccia subsequently filed a request for dismissal asking the Clerk of the Court to dismiss the first and second causes of action with prejudice and to dismiss the remaining causes of action without prejudice, "in order to expedite a possible appeal." The clerk entered the dismissal as requested on February 4, 2022. Spaccia timely appeals. (See *Flowers v. Prasad* (2015) 238 Cal.App.4th 930, 935–936 [noting " ' "appellate courts treat a voluntary dismissal with prejudice as an appealable order if it was entered after an adverse ruling by the trial court in order to expedite an appeal of the ruling" ' "].)

## DISCUSSION

Spaccia contends the forfeiture provision in section 7522.72, subdivision (c)(1), cannot be applied to her because she began receiving pension benefits long before the passage of the 2013 legislation which enacted that provision. We conclude such retroactive application is constitutionally permissible.

8

## 1. Standard of Review

A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. (Code Civ. Proc., § 438, subd. (c)(3)(B)(ii).) A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review. (*Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 670–671.) All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law. (*Ibid.*) Courts may consider judicially noticeable matters in the motion as well. (*Ibid.*; *People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)

## 2. The court properly granted the motion for judgment on the pleadings.

A public employee's right to a pension is well established. (*Alameda, supra,* 9 Cal. 5th at p. 1074.) The vested rights doctrine, as it is known, is grounded in the federal and state constitutions and significantly restricts a state's ability to enact laws that substantially impair an employee's existing pension rights. (*Id.* at pp. 1074–1075.) Although a public employee has no express contractual rights in a pension plan created by statute, "such plans create *implied* contractual rights that are protected against legislative impairment by the contracts clause." (*Id.* at p. 1076; Cal. Const., art. 1, § 9.) Public employee pension systems exist to induce and reward long and faithful public service. (See, e.g., *Hipsher, supra,* 58 Cal.App.5th at p. 692.)

A public employee's pension rights are not absolute, however, as our Supreme Court has made clear over more than 60 years. As pertinent here, in 1955, the court articulated a test

9

to be applied to legislative measures affecting public employees' pension rights. (*Allen v. City of Long Beach* (1955) 45 Cal.2d 128, 131 (*Allen I*).) Two years ago, in *Alameda*, the Court reaffirmed that test with an added component: "In evaluating the constitutionality of modifications to a public employee pension plan, *Allen I* requires a court first to determine whether the modification imposes disadvantages on affected employees, relative to the preexisting pension plan, and, if so, whether the disadvantages are accompanied by comparable new advantages. Assuming the disadvantages are not offset, the court must then determine whether the legislative body's purpose in making the changes was sufficient, for constitutional purposes, to justify an impairment of pension rights. Although public employee pension plans may be modified 'for the purpose of keeping [the] pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system,' to survive contract clause scrutiny such changes 'must bear some material relation to the theory of a pension system and its successful operation.' (*Allen I, supra*, 45 Cal.2d at p. 131.) Finally, assuming the changes were made for a proper purpose, one further analytic step is necessary, as explicated below: The Legislature's decision to impose financial disadvantages on public employees without providing comparable advantages will be upheld under the contract clause only if providing comparable advantages would undermine, or would otherwise be inconsistent with, the modification's constitutionally permissible purpose." (*Alameda, supra*, 9 Cal. 5th at pp. 1092–1093.)

Effective January 1, 2013, PEPRA made numerous changes to existing public employee pension rights. Those modifications include, as pertinent here, the enactment of the pension

10

forfeiture provision in section 7522.72, which applies to employees who, like Spaccia, were hired before the statute's effective date. (§ 7522.72, subd. (a).) In *Cal Fire Local 2881 v. California Public Employees' Retirement System* (2019) 6 Cal.5th 965, our Supreme Court rejected a constitutional challenge to PEPRA's elimination of the option for public employees to purchase additional service time. The following year, in *Alameda*, the court rejected a constitutional challenge to PEPRA's modification of the definition of "compensation earnable," a key component in the calculation of retirement benefits. After issuing that opinion, the Court transferred two Court of Appeal cases that had considered the constitutionality of the forfeiture provision—*Hipsher* and *Wilmot*—back to the Courts of Appeal for reconsideration in light of *Alameda*. Both Courts of Appeal held, as they had initially, that the forfeiture provision is constitutional. We find *Wilmot* to be of particular assistance.

*Wilmot*, like the present case, involved an employee whose retirement was effective[8] before January 1, 2013, and who was convicted of a job-related felony after that date. When he was advised that the conviction resulted in a partial forfeiture of his pension rights under section 7522.72, the employee filed a petition for writ of mandate to compel the reinstatement of his full retirement benefits. (*Wilmot, supra*, 60 Cal.App.5th at pp. 642–644.) The trial court found the forfeiture provision did not violate either the contract clause or the ex post facto clause of

---

[8] The plaintiff retired in December 2012. Although he did not receive pension benefits until April 2013, those benefits were retroactive to December 2012. (*Wilmot, supra*, 60 Cal.App.5th at 641.)

the California Constitution and the Court of Appeal affirmed. (*Id.* at pp. 645–648.)

On reconsideration after *Alameda*, the Court of Appeal again upheld the constitutionality of the forfeiture provision as applied to the employee. The employee argued that the forfeiture provision could not be applied to him because he was retired before PEPRA's effective date, and therefore his pension rights were fully vested, "by which Wilmot means fixed and generally not subject to alteration without violating two provisions of our state constitution." (*Wilmot, supra*, 60 Cal.App.5th at p. 654.) The court first addressed the employee's contention that the forfeiture provision could not be applied to him because the statute only applied to "employees" and he was no longer an "employee" because he was retired. For reasons not pertinent here, the court largely rejected the employee's distinction. But the court assumed, for argument's sake, that the employee was fully retired before January 1, 2013, and went on to address the constitutionality of the forfeiture provision. (*Id.* at pp. 655–656.)

The Court of Appeal explained the test set forth in the *Alameda*, as follows: "First, the court determines whether the legislative change of the status quo imposes 'an economic disadvantage on affected employees and, if so, whether those disadvantages are offset in some manner by comparable new advantages.' (*Alameda County, supra*, 9 Cal.5th 1032, 1082, 1092.)

"Second, the court 'must then determine whether the government's articulated purpose in making the changes [is] sufficient, for constitutional purposes, to justify any impairment of pension rights.' (*Alameda County, supra*, 9 Cal.5th 1032, 1082.) Constitutionally, 'modifications of public pension plans are

12

permissible only if they relate to the operation of the plan and are intended to improve its functioning or adjust to changing conditions.' (*Id*. at p. 1094.) Stated in other terms, ' "alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation." ' (*Ibid*.)

"Third, even if the changes were made for a proper purpose, '[t]he Legislature's decision to impose financial disadvantages on public employees without providing comparable advantages will be upheld under the contract clause only if providing comparable advantages would undermine, or would otherwise be inconsistent with, the modification's constitutionally permissible purpose.' (*Alameda County, supra*, 9 Cal.5th 1032, 1093.)" (*Wilmot, supra*, 60 Cal.App.5th at p. 656.)

Applying that test, the court noted that "[t]he first step is quickly resolved, for there is no dispute that section 7522.72 diminished county employees' pension rights in that no longer could an employee commit job-related felonies and face no adverse financial consequence. The Pension Reform Act did not include any compensatory or comparable advantage." (*Wilmot, supra*, 60 Cal.App.5th at p. 656.)

As to the second step, the court considered several sources including the legislative history of section 7752.72, a prior Supreme Court case, and the public policy concerns underlying pension forfeiture. The court summarized its analysis this way: "The ultimate question is whether a modification of a pension is reasonable, in terms of the parties' expectations and the measure's necessity, in serving an important public purpose. (See *Alameda County, supra*, 9 Cal.5th 1032, 1075–1077, 1089, 1100; *Allen v. City of Long Beach* (1955) 45 Cal.2d 128, 131

['modifications must be reasonable']; *Wallace* [*v. City of Fresno* (1954)] 42 Cal.2d 180, 183–184 [(*Wallace*)] [courts must 'determine whether the changes made come within the bounds of a reasonable modification'].)

[¶] … [¶]

"To judge from earlier opinions, the most frequently expressed sentiment [regarding pension forfeiture] was that 'one of the primary objectives in providing pensions for public employees … is to induce competent persons to enter and remain in public employment' during which they will render ' "long-continued and faithful services." ' (*Kern v. City of Long Beach* [(1947)] 29 Cal.2d 848, 856; see *Carman v. Alvord* (1982) 31 Cal.3d 318, 325, fn. 4 ['Pensions … help induce faithful public service']; *Lix v. Edwards* (1978) 82 Cal.App.3d 573, 578 ['Pension plans … induce continued faithful service by the employee']; *McCarthy v. City of Oakland* (1943) 60 Cal.App.2d 546, 550 ['Many of the pension laws in this state are based primarily upon the rule that rewards will be given for the faithful performance of future services']; *Klench v. Board of Pension Fd. Commrs.* (1926) 79 Cal.App. 171 [speaking of persons 'retired from a public service to which they devoted many years of faithful adherence']; cf. *Haywood v. American Fire River Protection Dist.* (1998) 67 Cal.App.4th 1292, 1296, 1304 ['faithful performance of duty']; *MacIntyre* [*v. Retirement Board of City and County of San Francisco* (1941)] 42 Cal.App.2d 734, 736 ['it is an implied condition of employment, and hence a condition of [the vesting of pension rights] that the duties of the employee shall have been faithfully employed'].)

"Withholding that inducement if the employee's performance is not faithful is an entirely logical response. An

14

employee who draws public pay while stealing public property, or embezzling public funds, or who uses public facilities or equipment to run an illegal business (which is what occurred in *Hipsher*), is the antithesis of a 'faithful' servant of the public trust. When misconduct turns into outright criminality, it is beyond dispute that public service is not being faithfully performed. To give such a person a pension would further reward misconduct." (*Wilmot, supra*, 60 Cal.App.5th at pp. 660–662.)

In sum, as to the second step of the *Alameda* analysis, the court concluded that "discouraging felonious conduct on the job qualifies as a measure aimed at 'preventing abuse of the pension system.' (*Alameda County, supra*, 9 Cal.5th 1032, 1054.)" (*Wilmot, supra*, 60 Cal.App.5th at p. 662.)

Finally, as to the third step, the court easily concluded that no comparable advantage was required to offset the forfeiture provision: "Put bluntly, why should the Legislature be required to come up with another way to reward criminality by public employees? Why should the Legislature be prevented from attacking public employee criminality unless it came up with another way for job-related crimes to be paid for with public money? Why should the Legislature have to compensate public employees not to commit crimes? With eloquent understatement, the *Hipsher* court concluded that accepting Wilmot's reasoning would 'yield perverse results,' 'would do nothing to disincentivize the very abuse the [Pension Reform Act] is intended to curb[,] would erode public trust,' and 'would be antithetical to the statute's purpose by unfairly enriching a malfeasant … employee for engaging in the very sort of abusive practices section 7522.72 is intended to curb.' (*Hipsher, supra*, 58 Cal.App.5th 671, 695, 683.)

15

"With minimal change, language from the Supreme Court closes the matter: 'It would be anomalous, at best, to hold that the Constitution requires current employees to be provided an equivalent advantage to mitigate the effect of [pension forfeiture] that, in the view of the Legislature, are inconsistent with the theory underlying the pension system. Requiring comparable advantages would be wholly inconsistent with the Legislature's purpose by restoring some form advantages that, in the view of the Legislature, should not have been available to county employees in the first place.' (*Alameda County, supra*, 9 Cal.5th 1032, 1102.)" (*Wilmot, supra*, 60 Cal.App.5th at pp. 663–664.)

We agree with our colleagues in the First District and adopt *Wilmot*'s well-reasoned analysis. Regarding the first step of the *Alameda* test, it is plain that the forfeiture provision diminished certain employees' pension rights under CalPERS and that PEPRA did not include any compensatory or comparable advantage. (See *Wilmot, supra*, 60 Cal.App.5th at p. 656.) As to the second step—whether the forfeiture provision relates to the theory of a pension system and its successful operation—we agree that withholding pension benefits earned during the time a public employee commits an employment-related felony relates to the central purpose of the pension system. Many cases have observed that the primary purpose of a pension system for public employees is to provide deferred compensation as a reward for long and faithful public service. (E.g., *Hipsher, supra*, 58 Cal.App.5th at p. 692.) Those employees who commit employment-related felonies have *not* faithfully served the government or the taxpayers, and rewarding them with pension benefits for the period of felonious conduct is antithetical to the system's purpose. Finally, and as to the third step of the *Alameda*

16

test, we agree that it would be absurd to offset the forfeiture provision with some compensating measure. In adopting the provision, the Legislature recognized that public employees who commit job-related felonies have not fulfilled their employment agreement and should therefore not be rewarded with deferred compensation for a job well done. Any measure designed to offset the negative impact of pension forfeiture would entirely undermine the Legislature's purpose.

We now turn to Spaccia's contentions on appeal, which are few and unavailing. Mainly, Spaccia argues that pension benefits may only be modified before the benefits become payable. After the first pension benefits payment is made, she asserts, the benefits are untouchable and may not be modified for any reason. Applying this principle, Spaccia urges that the forfeiture provision cannot be applied to reduce her pension benefits because she received her first payment in December 2010, several years before PEPRA's effective date of January 1, 2013.

Spaccia uses brief quotations from several Supreme Court cases in support of her argument that this bright-line rule is well established. In each of those cases, the Court stated the general rule that "a public pension system is subject to the implied qualification that the governing body may make reasonable modifications and changes before the pension becomes payable and that until that time the employee does not have a right to any fixed or definite benefits but only to a substantial or reasonable pension." (*Miller v. State of California* (1977) 18 Cal.3d 808, 816; see also *Wallace, supra,* 42 Cal.2d at p. 183 [summarizing prior holding "that a public pension system is subject to the implied qualification that the governing body may make reasonable modifications and changes before the pension

17

becomes payable and that until that time the employee does not have a right to any fixed or definite benefits but only to a substantial or reasonable pension"]; *Terry v. City of Berkeley* (1953) 41 Cal.2d 698, 702–703 [same] (*Terry*); *Packer v. Board of Retirement* (1950) 35 Cal.2d 212, 218 (*Packer*) ["It appears, therefore, that both the cases and the policy underlying pensions for public employees indicate that any one or more of the various benefits offered, including interests created for third persons, may be wholly eliminated prior to the time they become payable, provided, of course, the employee retains the right to a substantial pension."].) This is, of course, a *general* rule to which there are limited exceptions, as the Court explained in *Allen I* and reaffirmed in *Alameda*. In any event, neither *Packer* nor *Miller* considered issues relating to the post-retirement modification of pension benefits. (See *Wishnev v. The Northwestern Mutual Life Ins. Co.* (2019) 8 Cal.5th 199, 217 ["It is, of course, 'axiomatic that a decision does not stand for a proposition not considered by the court.' "].)

Of the cases cited by Spaccia, only two (*Wallace* and *Terry*) considered the modification of pension benefits for persons who were already retired and receiving their benefits. Both cases are distinguishable. In *Terry*, for example, the Supreme Court explained *why* pension benefits should not generally be subject to reduction after a public employee retires: "In the present case the plaintiff had been retired; he had rendered the called-for performance; he had done everything possible to entitle him to the payment of his pension and all conditions precedent to the obligation of the city were fulfilled upon the determination that he be retired as a result of his service-connected disability. The pension payments are in effect deferred compensation to which

the pensioner becomes entitled upon the fulfillment of the terms of the contract which may not be changed to his detriment by subsequent amendment." (*Terry, supra*, 41 Cal.2d at p. 703.) As we have already explained, however, PEPRA's forfeiture provision applies only to those employees who *fail* to fulfill the terms of their employment by committing felonies related to their official duties.

In *Wallace*, the Court considered—and struck down—a measure that required the forfeiture of pension benefits by former employees who committed felonies during retirement. Unlike the present case, the measure at issue had been imposed before the plaintiff's retirement but it resulted in the post-retirement forfeiture of all the plaintiff's pension benefits when he was convicted of felonious tax fraud. (*Wallace, supra,* 42 Cal.2d at pp. 181–182.) Noting the general rule stated above—that reasonable modification of pension benefits is generally permissible before retirement—the Court observed "that pension payments are deferred compensation to which a pensioner becomes entitled upon performing all services required under the contract and that his retirement because of age ordinarily shows that he has done everything necessary to entitle him to payment of the pension." (*Id*. at pp. 184–185.) The Court concluded that the measure was not a reasonable, and therefore permissible, modification of pension benefits: "The termination of all pension rights upon conviction of a felony after retirement does not appear to have any material relation to the theory of the pension system or to its successful operation. Rather, the change was designed to benefit the city and, as stated in the city's brief, to meet the objections of taxpayers who would be opposed to contributing funds for the maintenance of a pensioner who had

19

been convicted of a felony. At the time of the amendment, Wallace had obtained substantial rights by reason of his services, and the amendment in effect operated as a condition subsequent to terminate a pension which he had fully earned." (*Id*. at p. 185.) Again, the court invoked the language of contracts and prohibited pension forfeiture by an employee who had fully performed his obligations—a circumstance not present here. In sum, Spaccia's case citations and isolated quotations do not assist her, nor do they persuade us to reject *Wilmot*.

Spaccia also attempts to distinguish her case from *Wilmot*, and thus avoid its application, based on the timing of her first pension benefits payment. She asserts, "*Wilmot* was not binding because that case only reached the issue of whether PEPRA could be applied to a *retired* public employee; *Wilmot didn't* reach the question of whether PEPRA can be applied to a former public employee receiving benefits *prior* to PEPRA's effective date." In *Wilmot*, as noted *ante*, the plaintiff submitted his application for retirement benefits in December 2012, but he did not begin receiving pension checks until April 2013, *after* the forfeiture provision was in effect. Of course, the benefits were paid retroactively to December 2012. (*Wilmot, supra*, 60 Cal.App.5th at p. 641.) Spaccia emphasizes that she began receiving pension checks in 2010, *before* the forfeiture provision was in effect, unlike the plaintiff in *Wilmot*. We fail to see how this distinction makes a difference and Spaccia provides no specific analysis on this point. The cases she references make no distinction between retirees who have received their first pension benefits check and retirees who have not. And she cites no statutory provision making such a distinction. Instead, Spaccia simply asserts that this factual distinction is dispositive. We see no logical reason

20

that this specific circumstance is relevant and in the absence of substantive explanation from Spaccia, we reject the argument. (E.g., *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 867 ["[A]n appellant must present argument and authorities on each point to which error is asserted or else the issue is waived."].)

## DISPOSITION

The order denying Spaccia's petition for writs of mandate and administrative mandamus is affirmed. CalPERS shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

HEIDEL, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.