[S. F. No. 2715. In Bank.—February 12, 1904.]

MILLER & LUX, Respondent, and SAN JOAQUIN AND KINGS RIVER CANAL AND IRRIGATION COMPANY, Appellant, v. ENTERPRISE CANAL AND LAND COMPANY, and JEFFERSON JAMES, Respondents, and J. C. MOWRY, Intervener, Respondent.

WATER-RIGHTS—APPROPRIATION FROM NAVIGABLE STREAM—TRESPASS BY SUBSEQUENT APPROPRIATOR — INJUNCTION.—Where a plaintiff has for many years appropriated water from a navigable stream for the irrigation of lands, and for the supply of the inhabitants of cities and towns with pure water, without complaint from any public authority, state or national, that navigation has been interfered with by such appropriation, no person not connected with the government can complain of such appropriation; and the plaintiff may enjoin the interference of a trespasser with its dam and ditch, and such trespasser cannot defend the trespass on the ground that plaintiff's dam obstructs the navigable stream.

ID.—LIMITATION OF MAXIMS.—The maxims that "No one acquires a right of action from his own wrong," that "Out of a base transaction a cause of action does not arise," and that "He who comes into a court of equity must come with clean hands," etc., have their limitations, and will not be allowed to work a great injustice and wrong, when the alleged unlawful act is unconnected with any transaction between the parties to the suit, and is one with which the defendant has no concern.

ID.—BILL OF EXCEPTIONS—SETTLEMENT BY EX-JUDGE—CONSTITUTIONAL LAW—STARE DECISIS.—The power of a judge who has tried a cause to settle a bill of exceptions therein, after the expiration of his term of office, conferred by section 653 of the Code of Civil Procedure, has been continuously recognized and declared by this court for too long a period of time to be now questioned as unconstitutional, and its validity is affirmed upon the rule of *stare decisis.*

APPEAL from a judgment of the Superior Court of Fresno County.  J. R. Webb, Judge.

The facts are stated in the opinion of the court.

George A. Rankin, Houghton & Houghton, and Frank H. Short, for Appellant.

W. C. Graves, N. C. Coldwell, Archie Borland, and Coldwell & Borland, for Enterprise Canal and Land Company and Jefferson G. James, Respondents.

Octave G. Du Py, for Miller & Lux, Respondent.

Isaac Frohman, for Intervener, Respondent.

McFARLAND, J.—This is an action to restrain the defendants from diverting water from the San Joaquin River by means of a certain dam and ditch.  The plaintiff Miller & Lux and the intervener, Mowry, assert rights as riparian owners on the river below defendants' dam.  The plaintiff the San Joaquin and Kings River Canal and Irrigation Company asserts rights as the owner of a ditch constructed long prior to that of defendants, and also as a riparian owner on the said river.  The court below rendered judgment as prayed for against defendants in favor of Miller & Lux and the intervener, and there is no appeal from such judgment; but the court found that there was no evidence introduced as to the ownership or riparian character of any land of the other

CXLII. Cal.—14

plaintiff, and that "for purposes of the issues in this case only" its allegations as to its ownership of lands are not proved. The court also refused to give any judgment in favor of said plaintiff, and rendered, as part of the judgment, the following: "It is further ordered, adjudged and decreed that the plaintiff the San Joaquin and Kings River Canal and Irrigation Co. take nothing as against the defendants the Enterprise Canal and Land Co. and Jefferson G. James, or either of them"; and from this part of the judgment the said last-named plaintiff appeals. As the defendant James claims under the other defendant, the questions involved on this appeal may be considered as being solely between the appellant and the Enterprise Canal and Land Company, respondent.

The following facts were averred in the complaint and found by the court: The appellant, the San Joaquin and Kings River Canal and Irrigation Company, was organized as a corporation, for the purpose, among other things, of constructing canals from the San Joaquin River and other streams for the irrigation of agricultural lands, and supplying the inhabitants of cities and towns with pure and fresh water. The San Joaquin River is a natural watercourse arising in the Sierra Nevada Mountains and flowing through the San Joaquin Valley. The appellant "is now, and for upwards of twenty-five years before the commencement of this action has been, the owner and in the possession of a water-ditch or canal known as the San Joaquin and Kings River Canal with the lateral branches thereof," and appellant "for more than twenty-five years before the commencement of this action has appropriated, taken out of, and diverted from said San Joaquin River, through said canal, six hundred cubic feet per second of the waters of said river, and said water has, when so appropriated, taken out, and diverted, been used by said plaintiffs, or furnished to others to be used for domestic, agricultural, stock, mechanical, manufacturing, and for other useful and beneficial purposes." The length of the main canal is "upwards of seventy-four miles," and the appellant has constructed and now uses and maintains "lateral and parallel canals in connection with said main canal, of upwards of one hundred and twenty miles in length, which are in actual use for taking water from the said main canal

which is used for the purpose of irrigating many thousand acres of agricultural land, whereon cereals and other crops are raised, and whereon a large number of sheep and other domestic animals are pastured.'' The appellant also ''is, and for more than three years before the commencement of this action has been, the owner and in possession of the water-ditch or canal known as the 'Outside' canal of the San Joaquin and Kings River Canal, with the lateral branches thereof''; and for more than three years before the commencement of this action appellant, by means of this last-named canal, has appropriated and diverted from the said San Joaquin River three hundred cubic feet of water per second, and has used the same for the useful and beneficial purposes above mentioned. This ''Outside'' canal is in length ''upwards of thirty-four miles,'' and its lateral branches are ''upwards of forty miles in length.'' At the commencement of this action the land that is irrigated by appellant's canals ''were occupied and cultivated by a large number of persons who were owners or tenants of said lands,'' who had on said lands ''many thousand acres of growing crops,'' and were using also ''a large number of acres of said lands for pasture for cattle, sheep, and other domestic animals, which animals were of great value.'' These canals, ''except in unusually wet weather,'' cannot be supplied with water from any source other than the San Joaquin River.

During the year 1898—the year before the commencement of this action, which was commenced March 8, 1889—the respondent The Enterprise Canal and Land Company ''wrongfully dug away and removed a part of the bank of said San Joaquin River at a point . . . above the said lands of plaintiff and above the said canals of plaintiff, and constructed a large canal or ditch running away from said river at that point and known as the Enterprise Canal and Land Company Canal.'' That on or about the first day of March, 1899, the respondents ''wrongfully and without right, by means of dams, levees, sticks, earth, and other obstructions by them wrongfully placed in the bed and channel of said San Joaquin River, obstructed the flow of said river and of the water to which plaintiffs were and are entitled as aforesaid, flowing down the plaintiffs' canals, and to the plaintiffs' lands,'' and caused the same to flow through respondents'

said canal. At the time of this diversion by respondents there was flowing in said river "not to exceed 650 cubic feet of water per second." The court also finds that "the defendants, The Enterprise Canal and Land Company, and Jefferson G. James, or their agents, servants or employees, are not entitled to take or divert any of the waters flowing in said San Joaquin River."

If there were no facts in the case other than those above stated, there would seem to be no plausible reason for denying appellant any relief. Upon these facts the respondents would be simply naked trespassers, taking from the appellant property of immense value which it had owned and possessed for a great many years, and in which respondents had no rights whatever. We learn, however, from counsel that the refusal of the court below to grant appellant any relief was based upon two other findings, to wit: 1. That the San Joaquin River at the point where appellant's canal taps the same is a "navigable stream"; and 2. That the dam by which appellant diverts the water into its canals obstructs the navigation of said stream. And it is contended that for these reasons the appellant, notwithstanding its long ownership and possession of this valuable and useful property, is without any legal means to protect it against trespassers, and that appellant and a large number of persons the value of whose lands is dependent upon the water furnished by said canals, are at the mercy of any one who without any right whatever may choose to prevent such water from flowing into said canals, and thus practically destroy the entire property of appellant therein.

It is contended by appellant that the two findings last above referred to are not sustained by the evidence; but we do not think that this contention can be maintained. There was no evidence that the stream in question was navigable for several years before the commencement of this action; but there was evidence that a great many years ago boats and barges did at times, at certain seasons of the year, pass up and down it, and as there was no evidence that the condition had changed, it must be held that for the purposes of this appeal the stream is in a legal and technical sense "navigable." There is, however no evidence that there are any persons desirous of navigating the stream, or that this navigability is of any value.

And while the evidence of the effect of appellant's dam on the navigability of the stream is not very conclusive, still it is sufficient to warrant the court below in finding that it would, to some extent, obstruct such navigability, although it does not appear that any one who desired and attempted to navigate it was ever prevented from doing so by the said dam.

The position of respondents is, that the obstruction of a navigable stream is unlawful and a public nuisance, and that because appellant's dam, by which it diverts water into its canal, obstructs the navigability of the San Joaquin River, it cannot have the aid of a court of equity to protect its property against even a mere trespasser. The respondents themselves professedly have no right in the premises; they do not claim that, as persons desirous of navigating the stream, they have sustained any special damage, or any damage at all; they do not assert any right to navigation, but show that they themselves are trying to obstruct navigation by an act which they assert to be unlawful. They stand upon the bald proposition that, although under the general law the appellant has clearly property rights with which they are interfering, appellant is helpless to assert those rights or to stop respondents' trespasses.

The contention of respondents rests on certain maxims, as that "No one acquires a right of action from his own wrong," "Out of a base transaction a cause of action does not arise," "He who comes into equity must come with clean hands," etc. But these maxims have their limitations, and will not be allowed to work a great injustice and wrong when the alleged unlawful act is entirely unconnected with any transaction between the parties to the suit. Usually these maxims cannot be successfully invoked where the objectionable act in no way affects the equitable relations existing between the parties. Pomeroy, speaking of the maxim that "He who comes into equity must come with clean hands," after declaring that the principle "must be taken with reasonable limitation," says: "The maxim, considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure *affected the equitable relations subsisting between the two parties and arising out of the transaction;* it does not extend

to any misconduct, however gross, which is unconnected with the matter in litigation, and *with which the opposite party has no concern."* The same rule is declared in *Langdon* v. *Templeton,* 66 Vt. 173, 182; and in *Meyer* v. *Yesser,* 32 Ind. 294, it was held—in line with the general principle—that fraud without injury is never available as a defense in equity. The same principle was declared in *Ely* v. *Supervisors,* 36 N. Y. 297, where it was held that in an action for the destruction of property by a mob the fact that the houses destroyed were used for illegal purposes was no defense, and in *Lawrence* v. *Metropolitan Elevated Ry. Co.,* 126 N. Y. 483, where it was held that in an action for damages to premises by the maintenance of an elevated railroad, it was no defense that a house on the premises was kept as a house of prostitution. In the case at bar it does not appear that the maintenance of appellant's dam—whether unlawful or not—in any way affected the equitable relations existing between appellant and respondents; it had nothing to do with any contract or transaction whatever between said parties. Respondents do not represent the state or any person who suffered special damage from the alleged public nuisance. The state has allowed the maintenance of the dam for a long period of time; and it may never conclude to interfere to inquire into its lawfulness in the interest of a mere potential navigability which is apparently of little consequence, when such interference might destroy what, in this instance at least, seems to be a much more valuable public use of the water of the stream for irrigation. At all events, the state should be heard on that question; and in this private suit the decision should be in accordance with the rights of the individual parties as against each other, leaving the state or the federal government to determine whether or not it will initiate proper proceedings to inquire into the alleged public nuisance. Under the general law governing the acquisition of property in the use of water, as determined by the decisions of the courts, the appellant has, as against respondents, a complete right to have the water of the stream in question flow into its canals as it has flowed therein for many years, and to a decree restraining respondent from preventing such flow. The issue here is simply between the appellant and the respondents, not between the former and the state. In accordance with these

views the part of the judgment appealed from—which refuses any relief to the appellant—is erroneous, and should be reversed. (In their brief respondents argue that appellant also interfered with navigation by taking water out of the river, thus diminishing its current; but there is no averment of that kind in their answer, and, moreover, the effect of that kind of obstruction, so far as this action is concerned, is covered by the views above expressed.)

There is a bill of exceptions in the record which was settled by the judge of the superior court before whom the case was tried, after his term of office had expired; and it is contended by respondents that this bill cannot be considered because the part of section 653 of the Code of Civil Procedure which provides that a judge "may settle and sign a bill of exceptions after as well as before he ceases to be such judge" is unconstitutional, as attempting to confer the power to do a judicial act upon one who is not a judicial officer. This power, however, has been continuously recognized and declared by this court for too long a period of time to be now questioned. (*Cummings* v. *Conlan,* 66 Cal. 403; *Leach* v. *Aitken,* 91 Cal. 484; *Turner* v. *Hearst,* 115 Cal. 394.) The bar has, no doubt, generally considered the power as valid and acted upon it; and numerous cases are probably here, or on their way to this court, in which the bills of exceptions and statements have been settled as in the case at bar, and great injustice would be done if former rulings on the matter were not adhered to. And although the point of the unconstitutionality of the section may not heretofore have been expressly raised and decided, still we think the *principle* of the rule of *stare decisis* should apply, and the settlement of the bill be held to be valid.

We see no necessity for another trial of this case. The findings show that appellant's main canal carries six hundred cubic feet of water per second from said stream, and that the "Outside" canal carries three hundred cubic feet per second "of the water of said San Joaquin River," and upon the findings the appellant is entitled to a judgment against respondents restraining them from any diversion of water from the said river which will interfere with the flowing of said amounts of water respectively into said two canals of the appellant.

The part of the judgment appealed from is reversed, and the superior court is directed to render judgment in favor of the plaintiff and appellant, the San Joaquin and Kings River Canal and Irrigation Company, and against the defendants and respondents, The Enterprise Canal and Land Company, and Jefferson G. James, enjoining and restraining them from any diversion of the water of the San Joaquin River through the Enterprise Canal and Land Company Canal, or by any means whatever at any point on said river above the heads of appellant's two canals, which will obstruct or interfere with the flow of six hundred cubic feet per second of the water of said river into appellant's main canal, known as the San Joaquin and Kings River Canal, or which will obstruct or interfere with the flow of three hundred cubic feet per second of the water of said river, into the canal of appellant known as the "Outside" canal.

Henshaw, J., Shaw, J., Van Dyke, J., Angellotti, J., Lorigan, J., and Beatty, C. J., concurred.

Rehearing denied.