[S. F. No. 7792. In Bank.—February 20, 1918.]

WESTERN UNION TELEGRAPH COMPANY (a Corporation), Respondent, v. COMMERCIAL PACIFIC CABLE COMPANY (a Corporation), Appellant.

Telegraphs—Cable Company—Discriminatory Regulation and Tolls.
    In an action by a telegraph company against a cable company to enjoin the imposing of a discriminatory regulation, and the exaction of a discriminatory toll, and to recover damages for injuries sustained by the demand and exaction, where it appeared that the defendant was engaged in the business of transmitting cablegrams

between its terminal in San Francisco and Oriental points, and received its principal business from the plaintiff and another telegraph company, both telegraph companies having offices scattered throughout the United States and being competitors in the business of local telegraphy and also in the business of receiving and forwarding messages for delivery by the cable company's lines, and where it appeared that the cable company required the plaintiff to add to all messages delivered by it for transmission by the defendant, the words "via San Francisco," together with the date of the acceptance of the message at San Francisco, making four or five words in all, for which defendant charged and exacted the payment of its regular toll of one dollar a word, but did not require the addition of such words or such payment on messages received by the defendant from the rival company or from private customers, such requirement and regulation and additional toll were unreasonable and discriminatory and unlawful.

Id.—Estoppel—Plaintiff Not Estopped by Similar Acts—Demurrer.—A demurrer was properly sustained to an answer setting up that plaintiff had been guilty of attempting to impose and enforce similar requirements in its own business throughout the country.

Id.—Damages—Shrinkage in Business—Loss of Probable Profits.—The injury which the plaintiff would sustain through falling off in business with consequent loss of profits, as a direct result of such discrimination is the proper subject of admeasurement of damages where the evidence discloses a reasonable possibility of their approximate estimation.

Id.—Evidence of Damages—Findings Not Disturbed.—Where the evidence furnished more or less definite data, from which to make the approximation on which the trial court made its findings and judgment as to the plaintiff's probable loss of profits resulting from defendant's wrongful act, the supreme court will not disturb the finding and judgment in that respect.

Equity Maxims—Clean Hands.—The maxim that he who comes into a court of equity must do so with clean hands has reference to the particular transaction in which relief is sought, and not to the general morals or conduct of the person seeking relief.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Garret W. McEnerney, Percy E. Towne, and Wm. W. Cook, for Appellant.

Beverly L. Hodghead, and Albert T. Benedict, for Respondent.

RICHARDS, J., *pro tem.*—This is an appeal from a judgment in favor of plaintiff in an action to have it established that certain charges and tolls exacted by the defendant from the plaintiff for the transmission of its messages over the Pacific Cable to Oriental points are discriminatory and excessive, and to have the defendant enjoined from the imposition and exaction of such charges and tolls, and to recover damages for injuries alleged .to have been sustained by the plaintiff through such demand and exaction. The main facts of the case are not the subject of much controversy though the conclusions drawn from them by the respective parties to the action are widely divergent. The defendant, Commercial Pacific Cable Company, is the owner of the Pacific Ocean cable having its American terminus at San Francisco and extending by way of Hawaii to the principal ports in China, Japan, and the Philippine Islands. This cable was constructed in 1902 and was put into operation in the following year. The American business transmitted over it westward originates in all parts of the United States where there are telegraph offices and is transferred to the cable wires at San Francisco. The two principal suppliers of business in the way of cablegrams to the defendant have from the inception of the operation of its cable been the plaintiff, Western Union Telegraph Company, and the Postal Telegraph Cable Company. These two companies have offices scattered generally throughout the United States, and are not only competitors in the business of local telegraphy, but are also competitors and rivals in the business of receiving and forwarding messages for trans-Pacific telegraphy by the defendant's cable lines. This latter competition and rivalry began when the defendant's cable was opened for operation in 1903, and still continues. The defendant has from the beginning charged a uniform rate or toll of one dollar per word for messages from San Francisco to the Orient. This charge or toll is collected by the Telegraph Company receiving the message for transmission at the point of its acceptance, in addition to its charge for the local service to San Francisco, and is paid by the company receiving it to the defendant. Prior to 1908 this charge or toll was uniform in its application to its chief competing customers. The defendant, though by the terms of its articles of incor-

poration it apparently contemplated the establishment by itself of a system of cable and telegraph lines to be owned by it extending from the Orient eastward as far as New York, has never, in fact, constructed or operated any telegraph lines to the eastward of San Francisco, which latter point has always been, and still remains, its terminal. In the year 1908 the defendant entered into an arrangement with the Postal Telegraph Cable Company by which the latter corporation agreed to construct and maintain a telegraph line between New York and San Francisco for the transmission exclusively of cable messages. The result of this agreement was the establishment between the defendant and the Postal Telegraph Cable Company of friendly relations in which the plaintiff did not share. On May 23, 1908, the defendant company gave notice to the plaintiff that thereafter there would be added to each of the latter's messages delivered to defendant for transmission to the Orient, the words "via San Francisco," together with the date of the acceptance of the message at San Francisco, making four or five words in all; and that upon such added words the plaintiff would be required to pay the regular charge or toll of one dollar per word. The effect of the enforcement of this requirement was to add approximately five dollars to the cost of each cablegram delivered by the plaintiff to the defendant for transmission by its cable to Oriental points. A like addition of these words was not required by the defendant from the Postal Telegraph Cable Company, nor were they added to its messages, nor was a like charge or toll exacted by defendant from it. The direct result of the enforcement of this rule against the plaintiff was an increase in the cost of cable messages accepted by plaintiff for transmission to the Orient over the defendant's cable to the extent of such added charge or toll over that required to be paid for a like service by its competitor and rival, the Postal Telegraph Cable Company. The plaintiff paid under protest these added charges for about two months after the date of their imposition, and then, and on July 23, 1908, commenced this action for an injunction and for damages.

The trial court made its findings in the plaintiff's favor upon the issues tendered in the pleadings and rendered its judgment accordingly, enjoining the defendant from the further imposition of these added charges and tolls. It also

found the plaintiff entitled to recover the sum of $1,582.12, the amount actually paid by it as a result of the said exaction, and the further sum of one thousand dollars damages for injuries to plaintiff's business during the period of its imposition.

While the record contains many assignments of error on the part of the appellant, they all revolve about its four main contentions in this appeal. These are, first, that no added charge or toll is made by defendant against the plaintiff; that the charge or toll in question is made by the Postal Telegraph Cable Company, and whatever recourse, if any, plaintiff has is against it and not against the defendant; second, that the requirement of the added words to the plaintiff's messages is reasonable and necessary in the conduct of the defendant's business, and, hence, the added charges and tolls are proper; third, that any discrimination that may exist in favor of the Postal Telegraph Cable Company is neither unjust nor unreasonable but is justified by the relation between the defendant and that company; fourth, that the court erred in its judgment for damages against the defendant, especially in its award of one thousand dollars for injuries to the plaintiff's business, such damages being too remote and speculative to be justified.

As to the first of these propositions we are of the opinion that the evidence does not sustain the appellant's contention. The evidence was without serious conflict that the defendant is and was at all times the owner of the Pacific cable since its construction from and including its terminus in San Francisco to its various Oriental terminii; that the defendant exacted from all customers using said cable the full amount of its usual charges and tolls from San Francisco to all points westward, and that such charges and tolls in so far as they refer to the words of the message itself were and are collected from both the Postal Telegraph Cable Company and the plaintiff herein without division or reduction; that the cable operator at San Francisco has supervision over all the defendant's cable operators wherever located, and keeps accounts of all its messages, and reports the same directly to the defendant in its New York office, and that its customers make settlements upon these reports, paying directly to the defendant the sums shown therein to be due. It is true that by virtue of the aforesaid friendly arrange-

ment between the defendant and the Postal Telegraph Cable Company the San Francisco office of the latter is also the office of the defendant, and that the operator there in charge is an employee of the Postal Telegraph Cable Company, and that the forwarding of all cable messages is accomplished through the Postal Telegraph Cable Company by the use of its offices, instruments, and employees; but the evidence sufficiently shows, and we think the court correctly found, that in performing these various services the Postal Telegraph Cable Company acts merely in the capacity of an agent for the defendant, and that it at all times acted as such agent in the addition of the words indicated to the plaintiff's cable messages and in the imposition and collection of the charges or tolls thereon which gave rise to this action.

Some emphasis is placed in the argument of counsel for appellant upon the form of the written agreement between the defendant and the Postal Telegraph Cable Company which is attached as an exhibit to its answer herein, but an examination of that document does not induce a change of view as to the relation of agency between the parties to it in so far as the operation of the San Francisco office which is the terminus of defendant's cable is concerned, nor as to the imposition of the charges or tolls of which the plaintiff complains. In addition, however, to this, it appears that this written agreement was not formulated or entered into between the parties to it until several months after the present action was begun, and must have little, if any, influence in the determination of these issues.

The next contention of the appellant is that the requirement that the words "via San Francisco," together with the further words giving the date of receipt of plaintiff's messages, is a reasonable and necessary requirement in the conduct of defendant's business, and, hence, that the charges therefor were proper and lawful. The evidence does not sustain this contention. It is conceded that the addition of these objectionable words were not requested by the plaintiff and were of no benefit to it and were not requisite in order to clarify, identify, or improve in any way its cable messages. That they are not a necessary regulation in the conduct of the defendant's business is shown by the fact that like words are not added to the cable messages of the

Postal Telegraph Cable Company, or of any of its customers, save only the plaintiff herein. Had the defendant been able to show that the addition of the words in question was required of all customers delivering to it cable messages for Oriental transmission, it might with a show of reason, backed by quite respectable authority, urge that the requirement of the addition of these words with the consequent charge therefor, was a reasonable regulation; but the very authorities which the appellant cites as sustaining its claim in respect to the reasonableness of this exaction show that the basis of the claim must be laid in the fact that the requirement is applied impartially to all customers without distinction from whom the Cable Company receive messages for transmission. It was so expressly held in the case of *Atlantic & Pacific Tel. Co.* v. *Western Union Tel. Co.,* 4 Daly (N. Y.), 527, which is relied upon by appellant as sustaining its views, wherein the court, referring to a similar requirement and the reasons for it, said: ''Whatever may be the form grounds for adopting it, no court of justice would hold that such a regulation is unreasonable if it is applied by the defendants to all telegraph companies in New York without distinction from whom they receive messages for transmission to Europe.'' In the absence, however, of such a showing, and in the presence of the conceded fact as to the two chief customers of the defendant seeking the transmission of cable messages, the imposition of the added words, with the consequent increase of tolls, is required of the one but not of the other, the inference is irresistible that the rule imposing this unequal burden upon the plaintiff alone is not a necessary or reasonable regulation in the conduct of the defendant's business, and is not, therefore, defensible upon that ground. This will appear all the more plainly a little later when its effect upon the plaintiff's cable business is the subject of review.

The appellant's third contention to the effect that whatever discrimination may exist against the plaintiff and in favor of the Postal Telegraph Cable Company arising out of the addition to the messages of the former of the required words with the consequent charges or tolls, is neither unjust nor unreasonable, requires little more than its mere statement to supply its refutation. The uniform charge of the defendant upon cable messages proper was and is a dollar a word.

When to this charge or toll there was superadded an additional charge or toll of approximately five dollars upon each cable message sent for the plaintiff, when no similar charge was exacted upon messages received for like transmission from its chief competitor, the Postal Telegraph Cable Company, the inevitable result would follow that the latter, being thus able to send cable messages to the Orient by the defendant's cable cheaper than its rival could do to the extent of approximately five dollars a message, would have a speedy increase in that line of business at the expense, amounting practically to the exclusion, of its rival in relation to that particular field.   That these facts and consequences are sufficient to show an unjust and unlawful discrimination the authorities fully establish.   (2 Wyman on Public Service Corporations, secs. 1286, 1290, 1291, 1299; *Postal Telegraph Co.* v. *Cumberland T. & T. Co.*, 177 Fed. 726; *Western Union Tel. Co.* v. *Call Pub. Co.*, 181 U. S. 92, [45 L. Ed. 765, 21 Sup. Ct. Rep. 561]; Hutchinson on Carriers, sec. 243; *Commercial Cable Co.* v. *Western Union Tel. Co.*, 45 Interstate Commerce Commission Reports, 33, May 21, 1917.)   The friendly arrangement between the defendant and the Postal Telegraph Cable Company out of the existence of which this discrimination obviously arose, can afford no justification for defendant consistent with the well-settled principles of equity governing the business of common carriers in their relation to their competing customers and to the public at large.   The only serious attempt on the part of defendant to justify this evident discrimination is to be found in its contention that the plaintiff is estopped to claim that, as to it, the discrimination is unreasonable and unjust because of the fact that it has, itself, been guilty of attempts to impose and enforce precisely the same requirements as to adding words and tolls in the course of its business throughout the country, and has used, and is in fact still using, the same sort of discrimination among its customers in so doing.   In its attempt to plead and prove by specific example the plaintiff's alleged delinquencies in respect to these matters, the defendant was frustrated by the action of the trial court through its order sustaining a demurrer to the defendant's supplemental answer setting forth the particulars of the plaintiff's sins in this regard, and by the further refusal of the court to permit testimony to be offered in support of the defendant's claim.

There was no error in the action of the court in respect to these rulings. The maxim that "He who comes into a court of equity must do so with clean hands," has reference to the particular transaction, in which relief is sought, and not to the general morals or conduct of the person seeking such relief. Were it otherwise, courts of equity would have found themselves largely restricted in their powers to afford relief to that certain class of litigants which have most frequently sought to invoke their aid in modern times. We find no merit, therefore, in the defendant's plea of an estoppel to the plaintiff's claim of an unjust discrimination in the instant case.

The final contention of the appellant is that the trial court was in error in its findings and judgment awarding plaintiff damages. The appellant does not very seriously complain that the court's award of $1,582.12, claimed and proven by the plaintiff to have been the amount which it actually paid for the transmission of the added words under the operation of the regulation of which it complains was an improper allowance, nor do we think that it could well object to this item of damages. But the appellant insists that as to the allowance of one thousand dollars as damages to the plaintiff for the alleged shrinkage of its cable business during the enforcement of the regulation complained of, that these elements of damage are too remote and speculative for admeasurement in the form of damages or for fixation at the amount awarded plaintiff. It admits with no dispute that the plaintiff would have some falling off in business with its consequent loss of profits as a direct result of the discrimination of which it complains. The injury which it would thus suffer through the loss of such probable profits has heretofore been held by this court to be the proper subject of admeasurement of damages in cases where the evidence disclosed a reasonable possibility of their approximate estimation. (*Shoemaker* v. *Acker*, 116 Cal. 239, [48 Pac. 62]; *Pacific Steam Whaling Co.* v. *Alaska Packers Assn.*, 138 Cal. 638, [72 Pac. 161]; *McQuilkin* v. *Postal Telegraph Cable Co.*, 27 Cal. App. 698, [151 Pac. 21].) In the case at bar the averments of the plaintiff's verified complaint in respect to this particular element of damage were not controverted by the defendant, its general denial thereof being stricken from its answer on motion, and not having been replaced by

an amendment thereto. The court, nevertheless, took testimony in respect to such averments, the plaintiff producing several witnesses in support thereof and the defendant contenting itself with a cross-examination of these witnesses. From the evidence thus elicited, it appeared that immediately prior to the imposition of the added charges and tolls upon its cable messages the plaintiff had been receiving for cable transmission over defendant's lines to the Orient an average of thirty messages a day from various parts of the United States, and that almost immediately after the said imposition of these added charges and tolls the number of these messages so received by plaintiff declined to an average of from ten to fifteen per day, which shrinkage in business continued up to the date of the institution of this action and the issuance of the injunction therein. There was also some evidence as to the cost and profit to the plaintiff in the sending of messages to the Orient by means of the defendant's cable as compared with that of the transmission of like messages to the same eastern points by way of the Atlantic cables. From the evidence thus adduced the trial court was furnished some more or less definite data from which to make the approximation on which it made its findings and judgment as to plaintiff's probable loss of patronage and profits from the defendant's wrongful act. We are unable to say that the amount fixed by the court as its estimate of such loss was an unreasonable exercise of its discretion in that regard. The finding and judgment in that respect will not, therefore, be disturbed.

No other points being presented for consideration upon this appeal, the judgment is affirmed.

Sloss, J., Shaw, J., Victor E. Shaw, J., *pro tem.*, Melvin, J., Wilbur, J., and Angellotti, C. J., concurred.