Filed 10/2/23  In re A.M. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re A.M., A Person Coming Under the Juvenile Court Law. | B325289 |
| _____ | (Los Angeles County Super. Ct. No. 22CCJP00170) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| A.L., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Linda L. Sun, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

_____

A.L. (Father) appeals from the juvenile court's findings and orders at two Welfare and Institutions Code section 364[1] hearings, the second of which culminated in an "exit order"[2] awarding sole legal and physical custody of Father's daughter, A.M., to her mother.

Father contends that we must reverse the exit order, as well as the court's related findings, because (1) the Department of Children and Family Services (DCFS) failed to provide him with adequate notice of the section 364 hearings, (2) the court failed to enforce its orders permitting him twice-weekly monitored visitation with A.M., and (3) the court erroneously believed that it lacked discretion to award Father joint legal custody of A.M.

We conclude, however, that any notice defects were harmless, Father forfeited his argument concerning visitation, and the record does not show that the court misunderstood the scope of its discretion in making the custody determination. We therefore affirm.

## FACTUAL AND PROCEDURAL SUMMARY[3]

On January 13, 2022, DCFS filed a section 300 petition on behalf of one-year-old A.M. The petition alleged, inter alia, that Father and V.M. (Mother) "[had] a history of engaging in violent altercations" in A.M.'s presence and described an August 28, 2021

---

[1] Unless otherwise specified, further statutory references are to the Welfare and Institutions Code.

[2] The juvenile court has authority to issue custody and visitation orders when it terminates jurisdiction over a minor. (§ 362.4, subd. (a).) Such orders are commonly referred to as "exit orders." (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1455.)

[3] We summarize here only the facts and procedural history relevant to our resolution of this appeal.

incident during which Father allegedly struck Mother while she was holding A.M. The petition alleged further that Father had overdosed on fentanyl in January 2021, and that both parents' substance abuse placed A.M. at risk of serious harm.

When DCFS filed its petition, Father—then 17 years old— was incarcerated in juvenile hall for violating the terms of his probation on a charge unrelated to the dependency proceedings. He appeared at the January 18, 2022 detention hearing in this case from juvenile hall virtually. After appointing counsel for Father, the juvenile court detained A.M. from his custody and released her to Mother. The court further ordered that DCFS provide Father with twice-weekly monitored visitation, which the court clarified "[could] be virtual from his place of incarceration."

On March 7, 2022, DCFS filed an amended petition, which added an allegation that Mother's "mental and emotional problems" endangered A.M.'s physical health and safety. The juvenile court conducted the detention hearing on the amended petition, as well as the jurisdiction and disposition hearing, that same day. The court dismissed the substance abuse and mental health allegations against Mother, but sustained the domestic violence allegations against both parents and the substance abuse allegations against Father. The court ordered A.M.'s continued placement with Mother and set a section 364[4] status review hearing for September 6, 2022.

---

[4] Section 364 provides, in relevant part: "Every hearing in which an order is made placing a child under the supervision of the juvenile court pursuant to [s]ection 300 and in which the child is not removed from the physical custody of his or her parent or guardian shall be continued to a specific future date not to exceed six months after the date of the original dispositional hearing. . . . The court shall advise all persons present of the date of the future

The court also issued case plans for both parents. Father's case plan required that he complete a 26-week domestic violence program, a full drug and alcohol program, a parenting class, and individual counseling. The case plan also entitled Father to twice-weekly monitored visits with A.M. Father—present virtually at the hearing and represented by counsel—did not alert the court that DCFS had failed to arrange any visits between him and A.M. in the time since the January 18, 2022 detention hearing.[5]

Following the March 7 hearing, authorities transferred Father from juvenile hall to a placement at a confidential address in Oakland, California. Father, however, turned 18 on July 25, 2022, and left the Oakland placement at some point in August 2022.

At the scheduled September 6, 2022 section 364 hearing, the juvenile court found notice proper and granted Mother's request to set a contested hearing concerning termination of dependency jurisdiction for November 1, 2022. The court did not make any other findings. Although counsel appeared on Father's behalf at the September 6 hearing, Father himself did not appear. It is unclear whether he received written notice of the hearing: The record contains a copy of a notice directed to Father, but does not contain any proof of service corresponding to the notice.[6]

hearings, of their rights to be present, and to be represented by counsel." (§ 364, subd. (a).)

[5] DCFS does not dispute that it failed to arrange any visitation for Father at any point during the dependency proceedings.

[6] Father points out that the face of the notice does not identify his address. DCFS explains that it redacted the copy of the notice that appears in our record to avoid disclosing the confidential address of Father's Oakland, California placement.

4

In an October 17, 2022 last minute information filing, DCFS informed the court that Father's whereabouts were unknown. The record reflects that DCFS attempted to contact Father at his last known cell phone number in advance of the November 1, 2022 hearing date, but contains no other evidence reflecting attempts to provide him with notice of the hearing.

Father did not appear at the November 1 section 364 hearing. The court nonetheless found notice proper and heard argument from Mother's counsel, who pointed to Mother's successful engagement in various programs in support of her request to close the case. In response, Father's counsel stated that he "[had] had no direction with [Father]," and "[did] not oppose Mother's request."

The court then announced its intention to terminate jurisdiction and to issue a juvenile custody order awarding Mother sole physical custody of A.M., but joint legal custody to Father and Mother. Counsel for DCFS, however, requested that the court award sole legal custody to Mother:

"[DCFS counsel:] Your Honor, I have one small question because this is a domestic violence case . . . . I would suggest perhaps a sole, sole, not sole joint type of closing order. . . . Father has completed no domestic violence classes—no fault of his own— but he has not completed domestic violence. That being said, he can't elevate to a joint legal. Closing order should be sole, sole for Mother, with monitored visitation for . . . Father."

In response, Father's counsel argued vigorously for joint custody:

"[Father's counsel:] . . . In this case this is a very young father. With him maintaining a case plan, he has done nothing to indicate that he should not have legal—joint legal custody. . . . [¶] . . . [¶] . . . He should have joint legal custody keeping in mind some of the barriers in his case plan at a minimum. When you are

5

talking about him not starting domestic violence, this is someone who became a father at 16 years old. He was incarcerated. His case plan doesn't identify him as a minor. His case plan doesn't identify him as incarcerated. And yet he has managed to engage in services while in custody. And I do think he should have joint legal while he pursues the remainder of his case plan."

At the conclusion of the parties' arguments, the juvenile court granted sole physical and legal custody of A.M. to Mother and ordered twice-weekly monitored visitation for Father. Father's counsel did not object to the visitation order, nor did he alert the court that DCFS had failed throughout the dependency proceedings to arrange any visitation between A.M. and Father.

Father timely appealed.

## DISCUSSION

Father argues that we must reverse the findings and orders at the section 364 hearings—including the exit order awarding Mother sole physical and legal custody of A.M. and limiting Father to monitored visitation—because (1) DCFS failed to provide him with adequate notice of the section 364 hearings, (2) the juvenile court failed to enforce its orders entitling him to twice-weekly monitored visitation with A.M., and (3) the court erroneously concluded that it lacked discretion to award Father joint custody of A.M. We disagree.

First, we conclude that any failure by the court to provide Father with adequate notice of the section 364 hearings was harmless. (See *In re R.F.* (2021) 71 Cal.App.5th 459, 474 (*R.F.*) [applying harmless error analysis to allegedly deficient notice].)[7]

_____

[7] For purposes of our analysis, we assume, without deciding, that Father did not receive adequate notice of the section 364 hearings.

6

Although Father failed to appear at the hearings, counsel appeared on his behalf. His attorney highlighted for the juvenile court the factors counseling in favor of joint legal custody—including Father's youth and the obstacles his incarceration posed to his completion of the case plan—and the court remained unpersuaded.

Father fails to articulate what additional arguments, if any, he would have made concerning custody had he received adequate notice of the hearings. He also fails to identify any other actions he might have taken (such as requesting a continuance or other form of relief) had he received proper notice. We therefore are not persuaded that it is reasonably probable that the court would have made findings and orders more favorable to Father absent the allegedly defective notice. (*R.F.*, *supra*, 71 Cal.App.5th at p. 474 [pursuant to the harmless error test, "a judgment in a dependency case should not be set aside unless it is reasonably probable the result would have been more favorable to the appealing party but for the error"].)

Second, we conclude that Father forfeited his challenge to the juvenile court's alleged failure to enforce its visitation orders. Father was present at the January 18, 2022 hearing at which the court first ordered that DCFS facilitate twice-weekly visitation for him, and Father appeared at the subsequent March 7, 2022 hearing. In addition, counsel appeared on Father's behalf at the September 6 and November 1, 2022 section 364 hearings. At no point during any of the hearings did Father or his counsel object to DCFS's failure to arrange visitation. Father thus failed to preserve this argument for appeal. (See *In re Dakota H.* (2005) 132 Cal.App.4th 212, 222 (*Dakota H.*) [the forfeiture doctrine "applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings"].)

7

Father's arguments in opposition do not persuade us otherwise. He contends that, under Family Code section 6701, he lacks the capacity to forfeit arguments on appeal because he was a minor for most of the dependency proceedings.[8] That section, however, sets forth certain restrictions on a minor's ability to enter into contracts and does not speak to a minor's appellate rights. (See Fam. Code, § 6701.) Moreover, Father fails to point to any authority in support of his argument. The two cases he cites concerning the forfeiture doctrine make no mention of Family Code section 6701. (See *In re Valerie A.* (2007) 152 Cal.App.4th 987 [no discussion of Family Code section 6701]; *Dakota H.*, *supra*, 132 Cal.App.4th 212 [same].)

Father also argues that DCFS's purportedly "unclean hands" in this case prohibit us from applying the forfeiture doctrine. Here again, however, Father fails to provide any authority in support of his position. The cases on which he relies do not arise in the dependency context, nor do they address the interplay, if any, between the unclean hands and forfeiture doctrines. (See *Lynn v. Duckel* (1956) 46 Cal.2d 845, 850 [affirming trial court's finding that plaintiff who unlawfully disregarded city's permit procedure had "unclean hands" and therefore was not entitled to relief]; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 57–58

---

[8] Family Code section 6701 provides: "A minor cannot do any of the following:

(a) Give a delegation of power.

(b) Make a contract relating to real property or any interest therein.

(c) Make a contract relating to any personal property not in the immediate possession or control of the minor." (Fam. Code, § 6701, subds. (a)–(c).)

[affirming trial court's finding that plaintiffs who violated vehicle code had "unclean hands" barring their recovery].)

Third, and finally, nothing in the record suggests the juvenile court misunderstood the scope of its discretion in making the custody determination. Father contends that DCFS argued at the November 1, 2022 hearing that Family Code section 3044, subdivision (a)[9]—which establishes a presumption against awarding custody to certain domestic violence perpetrators— applied to the proceedings, and that the court mistakenly agreed with DCFS's position. Although we agree that *In re C.M.* (2019) 38 Cal.App.5th 101, holds that the section does not apply to juvenile court proceedings, we disagree that the record supports that the court relied on that section in denying Father joint legal custody. The court did not mention the section nor did DCFS or Father. And nothing the court stated suggests it relied on that section or believed it lacked discretion to award joint custody to Father. The record is, at best, ambiguous as to what authority DCFS was relying on to oppose joint legal custody. It would be mere speculation to assume the court relied on a statute not mentioned nor its effect even explained.

Accordingly, we affirm the juvenile court's findings and orders at the section 364 hearings.

---

[9] Family Code section 3044, subdivision (a) provides, in relevant part, that "[u]pon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child." (Fam. Code, § 3044, subd. (a).)

9

## DISPOSITION

The findings and orders from which Father has appealed are affirmed.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


WEINGART, J.